EISENSTADT MFG. CO. v. COPELAND et al.†

(Court of Civil Appeals of Texas. Texarkana. June 6, 1912. On Motion for Rehearing, June 29, 1912.)

1. EXECUTORS AND ADMINISTRATORS (§ 126*) —COEXECUTORS—LIABILITY.

In an action against executors for the price of goods sold, where the jury found that the son of decedent, one of the executors, or some of the heirs, notified plaintiff after the testator's death that the business would be conducted by them, and that the son alone managed the estate by authority of the will, and that the business was closed out, and that the profits went to the support of the testator's children, the other executors who did not participate in the conduct of such business were not individually liable for any debt not incurred by the testator.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 372–376; Dec. Dig. § 126.*]

2. EXECUTORS AND ADMINISTRATORS (§ 117*) —LIABILITIES—MISAPPROPRIATION.

An executor who carries on a testator's business under authority of the will, and uses the profits in payment of rightful charges, is not individually liable to a creditor of the business for misappropriation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 323, 469–471; Dec. Dig. § 117.*]

3. APPEAL AND ERROR (§ 1039*)—REVIEW— HARMLESS ERROR—ELECTION.

Requiring plaintiff, in an action against executors, to elect whether he would contend that the estate was solvent or insolvent, was harmless, where the court submitted both issues to the jury, and it did not appear that plaintiff was denied argument on the facts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4075–4088; Dec. Dig. § 1039.*]

On Motion for Rehearing.

4. APPEAL AND ERROR (§ 930*)—REVIEW— MOTION FOR JUDGMENT ON SPECIAL ISSUES —PRESUMPTIONS.

A motion to enter judgment on a jury's findings on special issues does not call into question the sufficiency of the evidence to support the verdict or the conclusions of the court as involved in its judgment, but requires the appellate court to assume all findings and conclusions as proven.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. § 930.*]

5. APPEAL AND ERROR (§ 930*)—REVIEW— PRESUMPTIONS — CONSENT TO DECISION OF ISSUES BY COURT.

Where material issues on which the evidence was conflicting were submitted, but not answered, it must be assumed, on review of the denial of judgment upon the verdict, that the parties consented that the court, instead of the jury, decide such issues of fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3755–3761; Dec. Dig. § 930.*]

6. JUDGMENT (§ 256*) — VERDICT—JUDGMENT ON THE VERDICT.

The refusal to render a judgment for a particular party exclusively on the verdict of the jury on special issues is not error, unless it appears from the verdict that all issues of fact made by the pleadings and the evidence were determined, and that such party is entitled to a judgment as a matter of law solely on the findings; and, where issues submitted to the jury are not answered and remain for decision by the court, refusal of judgment on the verdict is warranted.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 446–454; Dec. Dig. § 256.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by the Eisenstadt Manufacturing Company against John Copeland and others. Judgment for plaintiff against part of the defendants, and plaintiff appeals. Affirmed.

Dan Copeland died June 23, 1903, leaving an independent will, naming John Copeland, J. W. Everman, and W. C. Pierce as executors. The will was probated, and the three named executors qualified and filed an inventory. The property devised consisted of realty, inclusive of the homestead, and personalty, and a jewelry business in Palestine and Marshall, with a branch at Longview. Part of the realty was community property of the testator and his wife, and a part the separate property of the testator. By the terms of the will it was directed that all the debts be paid, and it was desired that the personalty should first be exhausted to pay same before the realty was resorted to. The will devised to his son James the stock of jewelry in Palestine, and to the other children severally the realty was devised in fee simple. And the will by its terms devised to the three daughters, Mary, Annie, and Stella, "all my personal and mixed property of every description, except that which is herein disposed of otherwise." The jewelry business in Marshall and the branch in Longview were not otherwise disposed of in the will, and went under the will to the three girls named. The following appears in the will: "I desire that my jewelry business at Marshall and Longview be continued. I desire the business to be continued under the name of D. Copeland, it being the name under which I have conducted it. I desire my said business to be continued by my executors so long as it may be done with profit to my estate, or so long as it may seem proper in their judgment." The power granted by the terms of the will to the executors was: "I give and grant unto my said executors the full right and power to manage all of my business, and sell and dispose of and encumber any and all of my said property to carry into effect the provisions of this will." John Copeland conducted the jewelry business in the name of "D. Copeland" after the death of the testator, and some jewelry was purchased and debts

incurred therefor after the death of the testator. Appellant's debt was incurred for jewelry sold after the death of the testator, and was not a debt incurred by or arising from any contract of the testator. The jury made the finding that John Copeland conducted the jewelry business after the death of the testator as executor under the will. But the jury made the further finding that the other two executors did not deem it best to continue the jewelry business, and did not undertake to continue or manage it, and had nothing to do with its management after the death of the testator. The jury also made the finding that the net proceeds arising from the conduct of the business by John Copeland was by him expended in the expenses of the business and for the maintenance of the children of the testator.

Beard & Davidson, of Marshall, for appellant. F. H. Prendergast, of Marshall, for appellees.

LEVY, J. (after stating the facts as above). The case was submitted to the jury on special issues, and, after the return of the verdict, the appellant made a motion to have the court enter judgment on the verdict in favor of appellant. The motion asked for judgment in favor of appellant (1) against John Copeland in his individual capacity to the amount of the notes indorsed by him, and (2) against John Copeland individually for the entire claim sued for, and (3) against the estate of D. Copeland for the total amount sued for, and (4) against all the executors named in the will, as individuals. The court granted the motion as to the first and third grounds above, and entered judgment for the appellant for all the amount sued for against the estate of D. Copeland and against John Copeland personally to the amount of the notes indorsed by him. The court refused to grant the motion as to the second and fourth grounds above, and denied to appellant judgment against the executors in their individual capacity. Appellant predicates error by the first and second assignments on the ruling of the court, denying its motion to have judgment rendered in its favor on the verdict. The first assignment confines the objection to the refusal of the court "to grant the motion of the plaintiff for judgment against each of the said executors of Dan Copeland, deceased." If the language of the assignment should properly be construed as meaning to complain of the refusal of the court to allow judgment against the executors of the estate as such, then the assignment should be overruled, for the judgment in the record shows a judgment in terms against the estate of D. Copeland, deceased, and authorizing execution to be levied against the estate in the hands of the executors. The wording of the judgment in this respect is

substantially in the language of the appellant's motion. If, however, the assignment was intended to complain of the refusal to enter judgment on the verdict of the jury against the executors named in the will in their individual capacity, then it and the second assignment can be considered together as presenting the same point.

[1] And as the verdict of the jury and the facts proven did not warrant a judgment against the appellees individually, except to the extent that Copeland indorsed the notes, it was not error for the court to refuse the motion in this respect, and the assignments should be overruled. The petition sought to hold the three appellees individually liable for the entire debt of appellant upon the ground that they as executors had misapplied and misappropriated the funds of the estate, and had failed to carry out the trust reposed in them. The appellant's debt was entirely for jewelry and goods used in the conduct of the jewelry business, and for nothing else. According to the evidence, that portion of the indebtedness claimed other than the series of 27 notes dated in January, 1905, was admittedly contracted after the death of the testator, and was not a debt owing by the testator at his death. And as to the series of 27 notes dated in January, 1905, the evidence is conclusive that most of such debt was contracted by John Copeland after the death of the testator, and warrants the conclusion of the trial court, as involved in his judgment, that the entire debt was contracted after the death of the testator. The jury made the finding that John Copeland or the Copeland heirs gave notice to appellant after the death of the testator to the effect that the business would be conducted by the Copeland heirs, and that John Copeland alone managed the estate by authority of the will. The jury found that W. C. Pierce and John Everman refused to continue the jewelry business after the death of the testator, took no part in the management of the business or estate, and were never concerned in any way whatever at any time in continuing or in the conduct or management of the jewelry business. The jury found that the business was closed out January 1, 1906, by John Copeland, and that the proceeds or profits arising from the conduct of the business "went to carry on the business and support of the heirs." So, in view of the evidence that the debt of appellant was not a debt owing by deceased, but contracted by John Copeland after the death of deceased, the findings of the jury that John Copeland alone undertook to continue and conduct the jewelry business, and of which appellant had notice, would, on the entire record, warrant the court in refusing the motion to enter judgment for appellant against Everman and Pierce individually; for John W. Everman and W. C. Pierce, according to the findings of the jury, did not as executors deem it proper to continue the jewelry business after

the death of the testator, and did not undertake to conduct or manage it, to appellant's knowledge. Under the terms of the will, it was left to the judgment of the executors as to whether the jewelry business should be continued to pay off creditors of the estate. The terms of the will further provided that in case all three of the executors qualified—and all three, according to the record, did qualify—"then any two of them shall have all the powers granted under this will." The power to elect to continue the jewelry business was in the majority of the executors; and, the majority having elected to refuse to continue the business, then the power of John Copeland, acting independently and alone, and which fact was known to appellant, to bind the other two executors, could not be referable to any power under the will, and there is no pretense in the evidence that Copeland had authority, express or implied, to bind these appellees individually. As appellant was not a creditor of the estate at death of testator, the executors owed it no duty to continue the business. And, even if the terms of the will should properly be construed as conferring the power on any one of the executors independently to continue the jewelry business, still the other two executors would not be liable individually to appellant, a creditor of John Copeland, and not the testator, for any misappropriation of the proceeds, if any, by John Copeland. For the findings of the jury show that the other two executors exercised the power of refusal to continue the business, and did not in any way participate; and of this appellant knew. As John Copeland, in such construction of the will, would have the power to act alone, and the other two the power to refuse, the power of John Copeland to bind the other two individually for any subequent debt or for his tort would not exist. Having the power to act alone, John Copeland alone would be responsible to appellant for his misconduct, if any, of the business. The liability of the estate is a question here aside, for appellant was awarded a judgment against the estate.

[2] And, as the jury found that the proceeds or profits arising from the conduct of the business by Copeland were legitimately used and applied in payment of rightful charges, Copeland, on such verdict, was not liable personally for misappropriation. The jury failed to agree on any answer as to the disposition of the proceeds of the sale of the corpus of the business, and the court decided, as involved in his judgment, the conflict of evidence in favor of the contention of Copeland that the proceeds of the corpus sale of the business were properly disbursed and not converted by appellees or either of them.

[3] Appellant by the third assignment predicates error on an order of the court made after the evidence was all in, requiring it to elect whether it would contend the estate was solvent or insolvent. There is no bill of exception in the record beyond the face of the order made. Admitting that the court was without power to require the election to be made, no harm is made to appear to have resulted, for the court submitted both issues to the jury, and it does not appear that appellant observed the order of the court, and was denied argument on the facts.

The judgment is affirmed.

### On Motion for Rehearing.

The motion challenges the statement made that the facts warranted the conclusion of the trial court, as involved in his judgment, that the "entire debt" of appellant was contracted after the death of the testator. It is doubtful that we are warranted in saying that the "entire debt" was contracted after the death of the testator. The testimony of a member of the appellant company was that "at the time of the elder Copeland's death he was indebted to Eisenstadt in the sum of about $2,300." It is not clear that the other evidence contradicted this statement of the witness. So this left the evidence as showing that of the $9,000 sued for $2,300 of the amount was a debt owing by the testator. Being a creditor of the testator to that amount, and assuming that John Copeland had the power under the will, without being joined by the other executors, to undertake to run the jewelry business to produce funds to pay off creditors, and as an incident of such power incurred the further debt of appellant as a debt against the estate, the appellant could perhaps predicate a right to recover of the executors individually for a misappropriation or devastavit, if any, of the estate. Therefore the ruling of the court complained of should be considered from the further ground of whether the appellant was entitled on the verdict of the jury to a judgment against the executors individually for misappropriation or devastavit of the estate.

The one question presented on the appeal, as stated before, is as to whether the verdict of the jury on special issues required the court, on the motion of appellant, to enter judgment for appellant against the executors individually.

[4] This assignment does not call into question the evidence nor sufficiency of the same to support the verdict, nor sufficiency of the evidence to support the conclusions of the court as involved in his judgment; and, consequently this court is not empowered to pass upon such questions. We can only pass upon the ruling complained of from the findings of the jury as recorded in their verdict. In order to hold the executors individually liable for misappropriation or devastavit, it devolved upon appellant, assuming it to be

a creditor of the estate, to show a misappropriation or devastavit. The verdict shows material issues submitted to the jury. The question was asked the jury how much did the estate of D. Copeland owe at the time of his death in 1903; and the jury failed to answer, stating that "4" stood for $10,000, and "8" stood for $14,000. The amount owing was a material question in determining whether there had been a misapplication, and was an issue. The evidence must have been conflicting or the jury would not reasonably have differed. The next question asked the jury was how much was realized from the sale of real estate; and the jury made answer, "We cannot agree." This was a material issue in determining misappropriation or devastavit against the executors; and we must assume, as it was, that the evidence in this respect was in conflict. The jury was asked the further question of how much indebtedness of the Copeland estate has been paid by the executors; and the jury made the answer thereto, "Unable to assess the amount paid to creditors." The answer indicates either an uncertainty of evidence to decide the question, or such conflict as to make disagreement of decision by them. The jury was further asked to state the total indebtedness paid by the executors and to whom paid, and they answered, "Unable to answer." The jury was asked to state whether the estate became insolvent after the death of the testator; and they disagreed on answer, stating they stood evenly divided for and against.

[5] As the verdict was received in the above replies, and as the issues unanswered were material and the evidence conflicting, it must be assumed, in view of the motion, that the parties consented that, instead of the jury, the court make decision of fact on such issues. It therefore devolved upon the court to further make decision of fact on issues made by the pleadings and the evidence. So, assuming that appellant was a creditor of the estate, and as such could predicate the right to recover of the executors individually for devastavit, if any were shown, it could not be said that the appellant has shown that the verdict of the jury as recorded in their findings required the court to enter a judgment thereon against the executors individually.

[6] Before it would be error for the court to refuse to render a judgment for a particular party exclusively on the verdict of the jury on special issues, it must appear from the verdict itself that all issues of fact made by the pleadings and the evidence were determined, and that such party is entitled to a judgment as a matter of law solely on such findings. As the unanswered issues submitted to the jury remained for decision by the court, the court, as within his power, was warranted in refusing judgment against

the executors individually on the special verdict as returned and received. This answer disposes of the assignment, and consequently under the statute ends the further power of this court.

The statement appears in the original opinion that the jury made the finding that the two executors did not deem it best to continue the jewelry business. This is inaccurate, and is here corrected.

Appellant in its motion asks that the facts in support of the several contentions be given. It was not deemed material, in view of the assignment requiring us to assume all findings by the jury and court proven, to completely set out the facts nor to make statement covering all the contentions. In deference to the motion, however, we adopt and add, if necessary, the findings of the jury and the findings involved in the judgment of the court, to make the statement of the case complete.

The motion for rehearing is denied.