José Manuel Díaz, minor, represented and assisted by Juanita Díaz Torres, his mother with *patria potestas*, Plaintiff and Appellee, *v.* José Manuel Hernández, Defendant and Appellant.

No. 10790. Argued Nov. 6, 1953.—Decided Dec. 8, 1953.

E. *Martínez Rivera* for appellant. *Manuel Torres Reyes* for appellee.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

The former District Court of Puerto Rico, Bayamón Section, rendered judgment in an action claiming support, in which José Manuel Hernández was declared to be the father of minor José Manuel Díaz and as such under the obligation to support him and, consequently, ordering him to pay the minor the sum of seven dollars ($7.00) a week. Feeling aggrieved by that judgment, Hernández appealed to this Court alleging that the trial court committed several errors.

The first of those errors challenges the refusal of the lower court to hear the defendant in support of his petition to be allowed to interrogate Juanita Díaz, mother of the minor plaintiff, before the trial. This assignment of error is frivolous. Admitting, by way or argument, that defendant and appellant had the right to be heard in connection with that petition, the record discloses that he was heard. The question is simple. Before the trial, the defendant, relying on Rules of Procedure 26 and 27, obtained from the clerk of the lower court a summons directing Juanita Díaz Torres to appear before the clerk himself, on a specified day and hour, to testify on the facts alleged in the complaint for the purpose of uncovering facts which could be used by defendant as evidence at the trial. A similar notice was served on the counsel for minor plaintiff. In the belief that the Rules of Civil Procedure were not applicable to the summary proceeding in the case at bar, the latter counsel instructed witness Juanita Díaz Torres, and so notified plaintiff, not to submit to the interrogation. Thereupon plaintiff requested the trial court to issue an order directing the witness to submit to the desired interrogation. The court set a date for the hearing of that request, at which both parties appeared. After defendant argued the question raised, the court was of the opinion that the preliminary

examination was unnecessary and, in the exercise of its discretion, denied the petition.

Since the Rules of Civil Procedure are not applicable to an action for support filed under the summary proceeding of unlawful detainer, *Rodríguez* v. *Ramos*, 73 P.R.R. 6, and cases therein cited, defendant's petition rested with the discretion of the court. Defendant stated at the trial that the purpose sought by him was to uncover facts pertaining to the matter in controversy. It is unquestionable also that defendant should have alleged in his motion the grounds in support of the desired order. Although that motion has not been sent up to this Court, it is, however, partially transcribed in appellant's brief. The motion alleged that "in order to defend himself adequately from the claim, 'he needs to investigate and uncover pertinent facts' by means of such interrogation." The trial court entertained that motion as well as plaintiff's opposition. Appellant cannot therefore allege that he was not heard. Consequently, the first error assigned was not committed.

■ Neither was the second error. It is alleged in this error that the trial court abused its discretion in refusing to order a preliminary examination of plaintiff's mother. A careful study of the record discloses that defendant had ample opportunity to defend himself in this action, and that he actually offered all possible evidence to overcome the testimony of plaintiff's mother. It is the latter's testimony which actually supports the judgment appealed from. There was no such abuse of discretion.

■ The transcript of the evidence discloses that defendant informed the court, after he was through with the evidence, that that was his case, adding "I would like to file a memorandum," to which the court replied, "There is no question of law involved here; it's only a question of fact. The court is going to render judgment." Thereupon the court rendered the judgment from which this appeal was taken. The third error assigned is the refusal of the lower

court to permit defendant to file a memorandum. Appellant contends that this action of the trial court is a serious violation of due process of law. We disagree. However, before passing to consider this error, it is convenient to know the contentions of the parties, the points in controversy, and the evidence offered in order to settle the conflict.

The complaint alleges that Juanita Díaz Torres, plaintiff's mother, had sexual relations with defendant José Manuel Hernández in the year 1950, and that as a result of those relations a child named José Manuel Díaz, plaintiff herein, was born in Comerío on May 21, 1951. The complaint contains other allegations on defendant's financial condition which it is unnecessary to reproduce here. In his answer, defendant denied all the facts of the complaint, alleging as an affirmative defense that he has never had amorous or sexual relations with Juanita Díaz Torres. The question practically narrowed down to the fact of the paternity. In this connection, plaintiff's evidence consisted of his mother's testimony and the admission of the result of an examination of the blood of defendant and the minor. Defendant's evidence consisted of his own testimony and that of several witnesses. By this evidence the defendant denied having had sexual relations with plaintiff's mother and also tended to prove that she used to go out with other men, with one of whom she had sexual intercourse on one occasion.

In fact, the only question to be decided in the case was the conflicting evidence, as will be seen when we weigh plaintiff's evidence in order to determine its sufficiency. The trial court deemed that it was in a position to settle the conflict in the evidence and to apply the law of the case without the aid of memoranda. In so doing, the court exercised its discretion and, in the absence of a clear showing that there was abuse of discretion, its action cannot be considered erroneous.

Our Code of Civil Procedure contains no provision granting to litigants an absolute right to file briefs in the lower

court, as an incident of the trial, nor to offer arguments or oral reports in each case. The need for such reports may arise from the nature of the action and the complexity of the questions therein involved. In California where, as in Puerto Rico, there is no provision whatever granting the right of argument in civil actions which are tried without a jury, it has been repeatedly held that the matter is within the sound discretion of the court. *Dam* v. *Bond*, 251 Pac. 818. In *Larson* v. *Blue & White Cab Co.*, 72 P. 2d 612, it is stated at p. 613:

"At the close of the evidence, the court stated that it did not desire to hear any argument on the question of liability; that two hours hence counsel should be prepared with cases on the question of damages alone; that it had concluded plaintiff was entitled to judgment against defendants. Defendants assign as error the refusal of the court to hear argument on the question of liability. When the cause is tried by the court sitting without a jury, counsel has no absolute right to argument. The question of whether argument shall be allowed, or if allowed, restricted, is one within the discretion of the trial court. (Citations.) No abuse of discretion is shown herein. . . ."

The same conclusion was reached in Wyoming in *Eldridge* v. *Rogers*, 275 Pac. 101, and in Oakland in *Barness* v. *Benham et al.*, 75 Pac. 1130.

In the case at bar, defendant did not request an opportunity to present oral arguments at the close of the case, but merely petitioned for the filing of a memorandum. He did not even bring up before the court the debatable questions which called for the filing of memoranda. Under such circumstances, there was no abuse of discretion on the part of the court in denying defendant's request.

The fourth error is without merit. In the course of the testimony of one of defendant's witnesses, the judge asked him several questions for the purpose of determining whether he was telling the truth and, at the close of the direct examination, advised plaintiff's attorney not to cross-

examine him because the witness had made unbelievable statements. It can be inferred even from the transcript of evidence itself that the judge was justified in disbelieving that witness, aside from the fact that the judge was able to observe him in the course of his testimony, and was therefore in a better position than this Court to judge his veracity.

The fifth assignment of error alleges that the lower court erred in considering, as an element of proof, the results of a blood-grouping test of the child, its mother and the defendant.

■ The blood tests were made at the request of defendant himself. Defendant's attorney stated at the trial that he was in possession of a card from the Ramis Laboratories which showed that, according to the result of the test, José Manuel, the presumptive father, comes under group A; the presumptive child also under group A, and the mother under group O. The parties admitted, without objection, that that was the result of the blood grouping test. Defendant contends that the trial court should not have taken those tests into account in determining the paternity. However, the lower court, in admitting that evidence, stated that the fact that the child and the presumptive father came under the same group or type of blood did not prove that defendant was plaintiff's father.[1]

---

[1] The complete incident appears in the record as follows:

"The Court: Let us hear the evidence. Plaintiff is here in the Court and Your Honor can use her as a witness or cross-examine her. Defendant has been given every opportunity. There have been continuances; the blood test was made by order of the court, at the. request of defendant himself, in Ramis Laboratories; and that test shows that the presumptive father and the presumptive child have the same type of blood.

"Defendant: But that is an element which the court should not and cannot take into account in determining the paternity..

"The Court: .That is something that defendant himself requested and the court has to take it into consideration. The blood test was made and the child's type of blood is the same as his father's.

"Defendant: That does not prove that he is the father.

"The Court: Exactly. That does not prove that he is the father. That alone is not proof; if there is no other evidence to corroborate the blood test, or if the evidence offered is insufficient or incredible to the

Conceding that defendant's theory is correct that these blood tests may exclude paternity but can never prove it —see article by Dr. Unger appearing in Vol. 152, No. 11, p. 1006, of *The Journal of the American Medical Association*—in the case at bar, as will be seen, the trial judge had under consideration sufficient evidence, independent of the blood-type tests, to determine paternity. The error alleged in this assignment was not therefore committed.

The sixth and seventh errors contest the sufficiency of the evidence. Defendant contends that the testimony of the child's mother fails to establish a reasonably accurate basis to conclude that he is the father of the child. In support of his contention, he cites an article published by Dr. H. L. Stewart in Vol. 148, No. 13, p. 1083, *The Journal of the American Medical Association*, where the author holds that it may be assumed on the basis of his research that the maximum duration of pregnancy from a single intercourse is 285 days. However, the author himself, treating the question from a medico-legal viewpoint, admits in the article that "Decisions establishing paternity within a period of 300 days from the last coitus are reasonable, but longer periods seem most questionable and are conspicuous by the complete absence of any supporting data from this study." However, the child whose paternity is disputed was born May 21, 1951.

court, the complaint will be dismissed; and if defendant's evidence convinces the court that he is not the father, the complaint will be dismissed.

"I will hear all the evidence and decide the case in favor of whichever party is correct. Proceed."

At pages 17 and 18 of the transcript the following appears:

"The Court: Where is Dr. Ramis' report?

"Plaintiff: It should be in the record.

"The Court: I have a recollection that I read it.

"Defendant: I have a card showing the results of the three tests made by the Ramis Laboratories, from which it appears that José Manuel, the presumptive father, comes under group A; the presumptive child under group A; and hers under group O.

"Plaintiff: Let it be filed of record.

"The Court: Then you admit that what your lawyer read is the result of the blood-grouping test?

"Defendant: Yes, Your Honor."

The mother of that child declared that she had sexual relations with defendant for the first time, still a virgin, in July, 1950; that one week later they had sexual intercourse again, and afterwards for the third and last time.

Although the evidence fails to establish the exact date of the last coitus, there is ground to assume that it took place in the latter part of July or early in August. A simple arithmetical computation would show that there are less than 300 days from these dates to May 21, 1951, and that according to the authority cited by defendant it is not unreasonable to conclude, as did the lower court, that paternity was established. We cannot therefore agree with appellant that the judgment is not supported by the evidence.

The errors assigned not having been committed, the judgment appealed from is affirmed.

Mr. Justice Belaval concurs in the result.